Kathleen M. Dickson
Disabled, Analytical Chemist, Pfizer Inc.

**COMPLAINT / REPLY**

v. State of CT,
Yale University, et al

State of CT
v.
Kathleen M. Dickson
Disabled, Analytical Chemist, Pfizer Inc.

3:05 CV 91 (CFD), District of CT
CA- 05-328-Torres, District of RI
**CT CR04-021010**
**CT CR04-276816**
CT CP02-K09-007782

GA15 COURTHOUSE
20 FRANKLIN SQUARE
NEW BRITAIN, CT 06050

SEPTEMBER 29, 2005

Filed as recorded in certification

**MOTION TO DISMISS DANIEL DILZER AS SPECIAL PUBLIC DEFENDER**

**MOTION FOR CONTINUANCE**

**MOTIONS TO COMPEL**

## I. MOTION TO DISMISS DILZER

The "Special Public Defender" Daniel Dilzer did not defend the Plaintiff/Defendant Kathleen M. Dickson adequately on the following grounds:

Plaintiff has Chronic Lyme disease and High Functioning Autism. After DCF's Jessica Gauvin invented for Defendant Dickson, that she is a "dangerously intelligent" chemist, "like Ted Kaszynski," the Unibomber, who has "command hallucinations to kill" in the DCF trial, AAG Jessica Gauvin then criminally charged the Defendant/Plaintiff with this, Gauvin's same nonsense and the perjury Gauvin orchestrated as "harassing communications and threatening."

These were not threatening and harassing, as Dickson was complaining within her rights oof Gauvin's psychotic behavior to State legislators, Christopher Morano, the Chief State's Attorney, to the Statewide Bar Counsel, and to numerous other State and Federal agencies, which Dickson is allowed to do under all law.

Dilzer was required by Judge John G. Driscoll to enter the evidence now submitted, which was submitted under the Americans With Disabilities Act at the beginning of the DCF trial, which show that Dickson has Lyme Neuroborreliosis (Brain SPECT scan), and High Functioning Autism. The Autism is represented by superior visual-spatial abilities and very inferior verbal and auditory recall and processing, which in the second report was more than 2 standard deviations below age normal.

After Judge Kevin P. McMahon ordered Dickson to be treated for Lyme as a condition of her release, and stated that "Lyme is known to cause all sorts of psychiatric disorders" (but in this case it is Jessica Gauvin who is insane and dangerous), the State prosecution switched courts and public defenders and assigned Dilzer.

Dilzer did not want any evidence sent to him demonstrating that the Plaintiff/Defendant Dickson was innocent, nor did Dilzer refute the perjury of Elizabeth Byron of the Department of Mental Health and Addiction Services, who said for the court, that DMHAS was "not aware of the Plaintiff/Defendant Dickson's diagnosis of Lyme Disease" and that "Lyme is not a brain disease."

In the interim, since December 2004, the Plaintiff/Defendant has tried any and all means to have Gauvin arrested and prosecuted for walking into the Berlin Police Office and recording numerous lies, signing an affidavit to such, on March 25, 2004.

Earlier on March 25, 2004, the Plaintiff/Defendant Kathleen Dickson had faxed a motion to the DCF court for an Administrative Review, in which it would have demonstrated that Gauvin orchestrated perjury and defrauded the DCF court. Plaintiff Dickson specifically asked that law enforcement officers and someone from the Chief State's Attorney's Office be present, in order to arrest and place Gauvin in jail for her criminal behavior.

Upon this, knowing she was guilty, Gauvin ordered the Plaintiff's false arrest. Plaintiff/Defendant now submits the **evidence** which was supposed to be admitted at the beginning of the criminal cases **CT CR04-021010 and CT CR04-276816**, and the other evidence which supports the claim that this was a false arrest, DMHAS committed perjury, and Dilzer did not defend the Plaintiff/Defendant:

1) These are the psychological **evals**, evidence that Plaintiff has Lyme disease and
2) That it affects her brain 3 Brain **SPECT** scans;
3) That the Plaintiff and her children have **Lyme disease**,
4) That Elizabeth **Byron perjured herself** and said DMHAS was not aware that the Plaintiff had Lyme disease and that Lyme was not a brain disease
5) That Byron further perjured herself and stated that the Plaintiff refused to meet with a Neurologist- Plaintiff met with **Christopher Gottschalk**, Cross County Neurology who gave Plaintiff this document;
6) The Plaintiff is a former analytical chemist from Pfizer and testified the **FDA** in January about how LymeRIX was not qualified with a valid standard and had no been proven to be a vaccine.
7) That LymeRIX was Yale's non-vaccine, **US Patent No**
8) That Plaintiff later filed a scientific fraud and **racketeering complaint** with the US Attorney Kevin O'Connor in the summer of 2003 in New Haven, upon referral from AG Richard Blumenthal's staff lawyer in Hartford;
9) That Plaintiff's former Yale Psychiatrist **James Phillips**,
10) That James Phillips prescribed **all types of medication**, which made the Plaintiff/Defendant worse, committing **malpractice** and perjury as regards the treatment of this Lyme delirium, and injured the Plaintiff with the extra brain damage caused by these drugs. The **clonazepam** was for the movement disorder and agitation caused by the wrong drugs and malpractice. One is not supposed to treat an organic delirium with central nervous system depressing drugs, because that exacerbates the delirium according to the **American Psychiatric Associations own guidelines**. Lyme is to be treated medically, since it is a permanent brain infection;
11) That the Plaintiff has **a gag order** as terms of release for Gauvin's psychosis and crimes;
12) That the DCF unsubstantiated the **throat-slitting** allegations;
13) That Jessica Gauvin was present at the **depositions** in which she learned that the Plaintiff/Defendant was never physically violent to anyone in her life;
14) That the Plaintiff never sent Gauvin SOLELY any communications, that in fact these were open communications and to the proper authorities and were not disguised, and not threatening, but merely statements of law (**Death Penalty** is a condition of Color of Law abuses, which Gauvin

would be guilty of if anything happens to Plaintiff's children), that Gauvin said UCONN's Paul Chill was "brilliant, but on the other side";

15) That Gauvin herself mentioned her son **"Nicholas!!"** in the courtroom, where she was discussing walking in on her own son in the bathroom and then yelling "NICHOLAS!" in jer own words to Attorney Scott Sawyer, Gauvin made it appear as if the Plaintiff/Defendant Dickson was stalking Gauvin;
16) The alleged **"harassing communications and threatening,"** dated April, 14, 2004, which were exactly the opposite of what Gauvin said they were, and were in fact evidence that Gauvin placed Plaintiff/Defendant Dickson's children with **a known child-abuser and wife beater, Donald Dickson**. They also contain the letters written by Plaintiff's children, about how much they hate the DCF,
17) That the Defendant grieved DCF Attorney's Sarah **Gibson** and Jessica **Gauvin** to the **Bar Counsel**,
18) That DCF knew Plaintiff was not a **"fugitive from Justice"** as the State claimed, but rather was seeking political asylum in **Canada**, and later tried to contact the **FBI labs in Quantico** so that a chemist in the FBI could look at the scientific fraud committed by Yale since the US Attorney's Office appeared to not understand it (and not "demanding to be trained with the cadets");
19) Plaintiff did not know there was an arrest warrant out for her even as of **March 31, 2004**, in an email about having been informed Plaintiff would be committed April 2, 2004, by her former Attorney Peter J. **Bartinik** Jr.,
20) That the Plaintiff submitted a **Motion on March 25, 2004 for an Administrative Review** in the DCF court in Middletown,
21) That the Plaintiff/Defendant Dickson asked for the case to be returned to court, so that she could have a trial, having failed to get adequate protection from law enforcement, in all attempts all over the State and Federal Government, complaining about the criminal behavior of Jessica Gauvin- communication from Plaintiff/Defendant's probation officer Robin Giardi, in which she states, "**PER YOUR REQUEST, YOUR ACCELERATE REHAB ... IS BEING RETURNED** TO COURT OCTOBER 4, 2005..."
22) The Plaintiff/Defendant submits all of these into evidence in all the cases listed above, these **false criminal charges.**
23) Letter to the Editor by **Lewis Bull** regarding Vijay Sikand's unwillingness to report his adverse LymeRIX events (1999) to the FDA, and Mr. Bull's advising that no one should get this vaccine.

Thus, the Plaintiff/Defendant Dickson was falsely criminally charged, and the Plaintiff/Defendant Dickson did not "fail accelerated rehab," as Dilzer stated, but rather, having failed to have Gauvin arrested for lying to the Berlin Police, the Plaintiff/Defendant requests to return to court to have a criminal trial. This criminal trial will prove all of the perjury and false allegations and the guilty can be prosecuted under the law, **which is nearly exactly where we were on March 25, 2004 in the DCF case** and is the reason Gauvin filed the false criminal charges. Gauvin did not want to be arrested and charged for behaving criminally, defrauding the courts and orchestrating perjury.

Plaintiff never once contacted Gauvin privately and singly- all complaints were public and common. Gauvin harassed the Plaintiff Dickson and clearly did more than threaten her, Gauvin threatened and harmed the Plaintiff and her children, and placed the children with a known to be violent sociopath, **Donald G. Dickson,** which is a color of law abuse, and risk of injury to minors.

## II. MOTION TO CONTINUE

Plaintiff motions for a continuance the criminal and civil suits against the State of CT, 3:05-CV-91 (CFD) on the grounds that she needs to have a lawyer who can work with her- that is, one who is willing to accept evidence that the Plaintiff/Defendant is innocent, and that Jessica Gauvin is, in fact, criminally insane, and that Plaintiff will demonstrate that Judge Droney decided with prejudice not to appoint counsel, but that Plaintiff can proceed in pauperis.

## III. MOTION TO COMPEL:

Plaintiff motions for in the civil case 3:05 (CV)-91, that Judge Droney compel the US Attorney Kevin O'Connor to produce the evidence she requested, in which Erol Fikrig and Robert Schoen of Yale University advise physicians not to run any tests on LymeRIX adverse events vaccines in Rahn and Evan's "Lyme disease, Key Diseases Series" published in 1998, Chapter 9. This evidence supports the Plaintiff's claims that Yale and SmithKline knew LymeRIX was dangerous and perhaps particularly dangerous to people who had Lyme disease previously, which is exactly what Plaintiff observed and reported to the FDA vaccine committee on LymeRIX in January 2001 and is substantiated by the Letter to the Editor of Mr. Lewis Bull, of East Lyme, CT; exhibit 23. Plaintiff wishes a copy only of this chapter, and not the complete textbook, because Plaintiff has requested that this RICO evidence be brought into the federal civil court in Hartford by judicial marshals, demonstrating that indeed, this enormous complaint was filed with the proper authorities, the US Attorney's office- who failed to protect the public.

Attorney Patrick Noonan
741 Boston Post Road
Guilford, Connecticut 06437
3:05- CV- 91 (CFD)

US Attorney, District of Connecticut
Kevin O'Connor
157 Church Street
New Haven CT 06510

Chief Justice Torres
One Exchange Terrace
Providence, RI, 02903
CA-05-328-T

Chief State's Attorney
Christopher Morano
300 Corporate Place
Rocky Hill, CT 06067

Toni Merrill
Middletown Superior Court
1 Court Street
Middletown, CT. 06457
**CP02-K09-007782**

Healthcare Fraud Task Force
FBI New Haven
600 State St.
New Haven, CT 06511

This 30 day of September 2005

Kathleen M. Dickson, et al
23 Garden Street
Pawcatuck, CT 06379